LAND, J.
Plaintiff sued the defendant for $3,000 damages for personal injuries sustained while he was seated as a regular passenger in a caboose attached to one of defendant’s freight trains.
The petition alleges that said train stopped at Gut-Off Junction near the city of Shreveport, where the said caboose, was cut off and left standing, while certain work was being performed by said train; that the plaintiff was sitting quietly in his .seat, when said train suddenly backed into said caboose with great violence, hurling him from his seat and down against a box, and throwing another passenger, a heavy man, upon him; that plaintiff, upon reaching Shreveport, went to a doctor’s office for treatment, where it was discovered that he had been badly ruptured in two places, and that his heart had been injured, all the result of said shake-up; that the plaintiff was 58 years old; that said ruptures could not be cured, thus necessitating the wearing of two trusses the remainder of his life, and his heart was in a dangerous condition, having given him trouble a number of times since said injuries were received; that the plaintiff had suffered and would suffer great pain and agony both physical and mental, because of said injuries received, during the remainder of his life; and that his earning capacity had been greatly impaired.
The petition alleges that the plaintiff was a minister by profession, but, not having any charge, had recently been doing manual labor, and at the time he was injured was earning about- $80 per month.
The petition itemized the plaintiff’s damages as follows:

The answer denied every material allegation of the petition, and only inferentially admitted that the plaintiff was a passenger on the train in question, at the same time specifically denying that plaintiff was injured in any accident on said train, or that he received any injuries as the result of any negligence whatsoever on the part of the defendant or its employés.
After a very lengthy and hotly contested trial before the judge a quo, for reasons assigned by him in a well-considered opinion, judgment was rendered in favor of the plaintiff for the sum of $1,000 and all costs of suit.
The zeal and industry of counsel are attested by 291 pages of typewritten testimony and several depositions, which we have carefully perused and'considered.
The trial judge found that the plaintiff, his son, Crutch McDonald, and a traveling salesman, W. C. McCoy, of Little Rock, Ark., were passengers in the caboose on the occasion in question, and sums up their testimony as follows:
“They all say that, when the train backed into the caboose, it was violently done, and knocked everybody in there to the floor; that plaintiff struck the comer of the box, and had to be helped up, and lay down the balance of the way complaining of pain in the abdomen; and that no complaint was made to the train crew. There are some differences, but on the main facts they are the same.”
“The entire train crew testified that they had no recollection of any such violent reconnection with the caboose, and that they would have remembered if there had been any rough handling.”
The judge, after comments, said:
“So we cannot consider the testimony of the train crew testifying from memory as of any particular value.”
No member of the crew was in the caboose at the time of the collision, and accustomed as they were to loud noises, jolts, and jars, the violent collision with the caboose may *735 well have made no impression on their memories.
Conductors and engineers note only such accidents on the railroad as produce damage to persons or property, and in this case plaintiff’s hurt was not known to any member of the crew.
Witnesses were brought by the defendant from the state of Mississippi to impeach the character and reputation for truth and honesty of the plaintiff and his son.
As to such testimony, the trial judge remarks:
“The reputation testimony is really amusing. Every time a witness would take the stand, the opposition would prove that witness was a ‘liar and a thief,’ and then other witnesses would swear those witnesses were in about the same fix.”
Some of the impeaching witnesses give the plaintiff a good character as a preacher and singer, while they reflect on his reputation in pecuniary matters.
The impeaching testimony is stronger against plaintiff’s son, as to his reputation for truth and honesty in business dealings.
Such testimony, however, did not discredit the plaintiff and his son before the trial judge, as their testimony as to the collision was corroborated by that of McCoy, an intelligent and disinterested witness, whose reputation was not assailed by the defendant. .
Dr. H., who examined the plaintiff the day after the accident, found a small hernia in the groin, and a few days later found a ventral hernia.
Dr. S., a week or two later, examined and treated the same hernias.
Dr. A., nearly three months after the accident, with Dr. S., examined the plaintiff, and, in addition to the hernias, Dr. A. found a leak in one of the heart valves.
Dr. A. testified that the condition of the plaintiff’s heart was due to degeneration of the valve, and not to a trauma or blow. This view was adopted by the trial judge.
Dr. A. further testified that from his examination he could not tell whether the hernias were of long or short duration. Dr. S. in his testimony concurred in this view.
Dr. H. testified that on his first examination he found only the small hernia in the groin. Neither Dr. H. nor Dr. S. found any heart lesion.
Dr. H. found no external bruise, or other evidence of violence, on plaintiff’s body, and he and Dr. A. were of opinion that a hernia produced by a blow would be followed by intense pain and vomiting.
It is admitted by the doctors that hernia .may be produced by any sudden strain sufficient to disrupt the wall of the abdominal cavity.
Dr. H. gives as examples sneezing, coughing, vomiting, certain jarring of the body, etc.; and Dr. A. mentions lifting heavy bodies.
Dr. S. was of the opinion that the hernias might have been produced by the accident.
As to plaintiff’s physical condition within the year preceding the accident, the judge a quo said:
“The plaintiff worked in this parish. He did work which he never could have done in his present condition, work that it hardly seems possible for him to have done afflicted with two hernias, even if he did not have heart trouble at that time.”
This statement, among other evidence, is supported by the testimony of Mr. Moss, a prominent cotton planter, to the effect that the plaintiff worked for some months as stockman on his plantation; that the work was a man’s job, requiring plaintiff to arise before daylight and to labor until 8 or 9 o’clock p. m.; that the plaintiff performed his duties in a satisfactory manner, and was in strength and vigor above the average man of his age.
The evidence further shows that, for some months preceding the accident, the plaintiff had been employed on the Hutchinson plantation in work in a flower garden, and as hostler for a team of horses.
*737 The judge a quo did not believe the testimony of the volunteer witnesses from the state of Mississippi that the plaintiff did not do hard work in that state, and that he had hernia while there.
Plaintiff was an ordained minister of the gospel, who in his later years had no church in charge, and went about preaching and singing, without pay, and earned his living by farming.
The opinion of the judge a quo concludes as follows:
“We have not attempted to recite the testimony here, for it is too lengthy; but, taking it together, we have reached the conclusion that plaintiff did get hurt by a violent collision; that he has failed to substantiate his claim as to heart trouble, but, as to the hernias, we are not sure that the same are the true traumatic hernias, but plaintiff may have had a predisposition that way, and the shock finished the work.”
[1] As we are not prepared to bold that the judgment is clearly wrong in this ease, where the evidence is conflicting throughout, and the credibility of the witnesses is involved, and the quantum of damages is uncertain, the judgment appealed from must be affirmed; and. it is so ordered, defendant and appellant to pay the costs of appeal.
SOMMERVILLE, J.,. takes no part.