No. 9692.

Orleans Appeal.

---

ADAM LUTZ v. TOYE BROS. AUTO & TAXICAB COMPANY, INC.

---

(February 16, 1925, Opinion and Decree.)

---

*(Syllabus by the Court.)*

1. Louisiana Digest—Appeal—Par. 625, 636 637.

In a judgment for damages in favor of plaintiff in a physical injury suit, where the defendant admits the accident, and when the evidence on material issues as to the nature of the injury is conflicting, and where the quantum of damages is uncertain, an appellate court is not prepared to hold that the judgment is clearly wrong and will affirm the findings of the trial court as to the nature of the injury and quantum allowed.

(Civil Code, Art. 2315. Editor's note. McDonald vs. Texas & P. Ry. Co., 141 La. 732, 75 South. 663.

Appeal from the Twenty-eighth Judicial District Court, Parish of Jefferson, Hon. Prentice E. Edrington, Judge.

This is a damage suit for physical injuries.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

F. A. Middleton, C. J. Larkin, Jr., attorneys for plaintiff and appellee.

J. E. Fleury, Leslie Beard, attorneys for defendant and appellant.

BELL, J. Plaintiff sues the defendant for $5,000.00 damages for physical injuries sustained by him as a result of the defendant's taxicab having run into him while he was standing on a roadway at the Jefferson Race Track in the City of New Orleans.

It is alleged in the petition that as a result of the accident, plaintiff was struck in the back, right side, and leg, and suffered one complete inguinal hernia on the left side, also contusions of back, right leg and ankle, and other injuries about and near the place of the hernia; that he was taken to the Hotel Dieu, where he was operated on for the hernia, and remained in that institution for a period of twelve days; that, after leaving the hospital, he was confined to his room for an additional fifteen days, and that as a further result of the accident, he is unable to perform manual labor, his only means of livelihood, and that he will suffer pain and inconvenience and loss of strength all of his life because of the injuries inflicted upon him. He itemized his damages as follows:

For medical services ............ .................$  500.00
For medicines .............................    25.00
For board and lodging, including
    ambulance service, at Hotel Dieu    50.25
For loss of time from his work, for
    a period of six months...................  600.00
For mental pain and anguish, and
    physical suffering ......................... 3,824.75
                                                   ————————
    Total ............... ......................$5,000.00

It is further alleged that plaintiff was required in his employment as a director of traffic at the race track, to assist in directing the movement of automobiles to and **from the main entrance gate of the race**

track; that, in the performance of this duty, he was required to move about the main public road leading to said entrance gate, and was so engaged at the time of the accident, when suddenly and without warning, the defendant's taxicab rushed out of the parking space assigned for taxicabs and ran into petitioner, striking him in the back, right side and leg; that the operator of defendant's taxicab well knew that petitioner was employed to direct traffic and that his business required him to be at the place that he was, and that the said employee or chauffeur driving said taxicab, knowingly and wantonly and intentionally ran into and injured plaintiff.

Defendant answers by admitting that the accident occurred at the time and place alleged, but denies generally other allegations of plaintiff's petition, and particularly denies that plaintiff received the injuries complained of or that he has suffered from the accident the results enumerated. It is further denied in the answer that the accident occurred in the manner alleged or that it was due to the defendant's fault or negligence. The answer concludes with the special plea of contributory negligence charged against the plaintiff.

It appears from the evidence that there were four eye witnesses to the accident, the chauffeur of the taxicab and three other witnesses, employees engaged in service somewhat similar to the plaintiff. By a preponderance of evidence it is well proven that the accident occurred substantially as alleged in the petition, and as established by the record; that on the date of the accident, immediately after the races at the Jefferson Track had terminated, plaintiff, in the performance of his duty, was standing near the covered shed of the I. C. Railroad, between it and the grandstand of the Jefferson Track, some distance away; that the parking space for taxicabs was to the left of the I. C. Railroad covered way, and that just before the accident plaintiff had his back to defendant's taxicab, watching the traffic going at right angles to the aforesaid shed; that, while in this position, the taxicab in question moved out of its parking space suddenly, and while the plaintiff, with his back to said cab, was some 8 to 12 feet from it. This distance is admitted by the chauffeur of the taxicab, and the plaintiff alleges that he had not signalled to any of the taxicabs to go forward. The chauffeur denies that he received any signal from Lutz to stop or stand in the parking place; but he does not undertake to say that any signal had been given to him to start, nor does he establish any reason for having moved, other than his attempt to get the passengers out of the race track grounds as fast as possible. There is no doubt, however, that the car was not going at a rapid rate of speed, nor had it moved for any great distance, but the fact remains that it bore down upon plaintiff while plaintiff's back was turned to the car, and that it struck plaintiff in the back, knocking him over the bumper of the taxicab and against the radiator thereof. There is conflicting evidence as to whether the taxicab came to an immediate stop. The chauffeur states that he checked his car within six inches. Another witness says that the plaintiff was carried some fifteen feet after he was struck. The evidence shows that the chauffeur of defendant's car was entirely familiar with the method in which traffic was handled at the track, having been in the service of the company for many months, and particularly doing service at that locality. We can find no extenuating circumstances which would relieve the defendant from liability for the palpable negligence shown in this case. We are also convinced that the plaintiff was in no manner guilty of negligence, but was performing his duties in the manner and at the place where he had a right to be. It is proper to also hold that the mere fact that plaintiff's back was to the taxicab in

question, should have caused the driver thereof to be particularly cautious in attempting to move out of a space, against which the traffic director had at the moment turned his back.

There remains, therefore, but two questions to be determined: First, the extent of the damage, and, second, the reasonableness of the quantum of damages allowed by the trial court.

. We find that all of the physical injuries sustained by plaintiff are positively proven, except as to the most serious injury which plaintiff alleges he sustained, in the nature of an inguinal hernia on the left side. It is definitely established that the hernia existed after the accident, and that the operation performed upon the plaintiff after the accident was confined to the correction of this trouble. The first doctor attending the plaintiff is shown to have given him relief in regard to the contusions on his legs and back, and that shortly after plaintiff was in the hospital he suffered such intense pain and swelling in the left testicle and in the dorsal region, that he requested other doctors and surgeons to be called in. Dr. King, who appears to have performed the operation for the hernia, says that it was but a plain case of hernit, and he, as well as Dr. Odom, the first physician who attended plaintiff, and also Dr. Gessner, called as an expert on behalf of defendant, agree that it is not improbable that the accident could have caused the injury. None of these physicians or surgeons will state positively, however, that the hernia was not fully developed to the point of necessity for operation as a result of the accident. Dr. Gessner is of the opinion that it is impossible that a blow would be the cause of the hernia, and stated further, as his opinion, that it is possible that the hernia was almost protruding and that the blow was the finishing touch to bring it out where it could be seen. He states that a hernia is usually of slow formation, and

that no one strain will produce it, explaining that other internal developments must occur before the hernia or rupture itself is produced. Dr. Odom, the first physician attending the plaintiff, testifies that from symptoms and the examination made, it is his opinion that the development of the hernia was caused by the blow received in the accident; that he, as the family physician, had seen plaintiff several times prior to the accident, and is of the belief that if the hernia was developed on those occasions, that plaintiff would have known of its presence. We quote in part from Dr. King's testimony:

"Q. How would you account for that hernia appearing simultaneously with the accident, or immediately, two days thereafter, in the absence of any previous trouble?

"A. Just as I told you a minute ago. If the hernia sac was part of the way through that canal—that canal is about two inches long. If the sac was part of the way through, then that type of injury, or an injury of that type, could finish the job, so to speak.

"Q. There might be a weakness there that might last a year?

"A. Certainly.

"Q. And an accident of this kind would bring the hernia to what you might call a head?

"A. Yes.

"Q. Isn't that true?

"A. That could be done.

"Q. Let me ask you this. If you found that condition, the condition which I have just explained to you, that a man was theretobefore, apparently, as far as you know, perfectly healthy, and he was injured in that manner, taken to his home and put to bed, and in two days a hernia appeared to such an extent as to require an operation, what would your diagnosis as to how that hernia had occurred at that particular time?

"A. I don't know that I could come to a respectable opinion of that at all, and no one would, not in that kind of a case. No one would know whether there was a partial hernia existing beforehand or not. If

the patient didn't know it, and the physician didn't know it, the man operating on him at the time had no way of telling."

The trial judge, in his written reasons, discussing the expert testimony in regard to the inguinal hernia—and we are of opinion, from our examination of the particular evidence on this subject, that his conclusions are, in substance, correct—says:

"The physicians agree that a hernia of the character shown to have been suffered by Lutz would not be produced by the blow inflicted upon Lutz in this accident or a strain such as he suffered in recovering his poise. However, all agree that if the plaintiff was suffering from a weakness in this particular portion of his body, that the blow or strain suffered by him could have produced the condition of hernia which developed upon him two days after the accident and which condition necessitated the operation. The operation, therefore, was necessitated by the aggravated condition of the hernia caused by the accident."

The amount of damages allowed by the trial judge was $1,975.25, calculated as follows:

For pain and suffering endured by
  the plaintiff _____$1,200.00
Doctors A. C. King and M. M.
  Odom _____ 250.00
Medicines _____ 25.00
Board and lodging, including ambulance service at Hotel Dieu_____ 50.25
Loss of time for six months_____ 450.00

  Total _____$1,975.25

There is no evidence contradicting the proof found in the record as to the doctors' fees, medicine and hospital expenses. The trial judge has estimated from the confusing but uncontracted testimony of plaintiff as to his earning capacity during the period he was incapacitated. We find that the trial court was correct in approximating the earning capacity of plaintiff at $150.00 per month, and in fixing the period of disability at three months. It is not unreasonable to award the plaintiff damages for injuries and pain in the sum of $1,200.00. In the instant case, we are inclined to follow the doctrine expressed in the case of McDonald vs. Texas & P. Ry. Co., 141 La. 732, 75 South. 663, wherein the Supreme Court held:

"As we are not prepared to hold that the judgment is clearly wrong in this case, where the evidence is conflicting throughout and the credibility of the witnesses is involved and the quantum of damages is uncertain, the judgment appealed from must be affirmed."

In the instant case the evidence of the expert witnesses is somewhat conflicting. The fact of the accident itself has been admitted by the defendant, and we are not prepared to say nor will we hold that the quantum of damages allowed by the trial judge is unreasonable.

We think that the judgment appealed from is correct.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from herein be affirmed at defendant's costs in both courts.